[No. 11552-6-III. Division Three. June 10, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. NEMECIO G. LOPEZ, JR., *Appellant.*

260

*Antonio Salazar, Nicholas W. Marchi,* and *Salazar Law Offices,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Bruce Hanify, Deputy,* for respondent.

YULE, J.* — Nemecio Lopez appeals from a conviction of attempted possession of a controlled substance, marijuana, with intent to deliver. He argues that the trial court erred in

---

*Judge Dennis D. Yule is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

denying suppression of (1) evidence obtained pursuant to an electronic intercept order and (2) evidence obtained from a search of his vehicle. We affirm.

## FACTS

Informant Gregorio Cantu contacted the Sunnyside Police Department with information that Mr. Lopez wished to arrange the purchase of 80 pounds of marijuana for a third party and to purchase 10 pounds of marijuana for his own purposes.

The police gave Mr. Cantu a small sample of marijuana which he provided to Mr. Lopez. The two agreed upon a price of $800 per pound and Mr. Lopez agreed to purchase 10 pounds of marijuana from Mr. Cantu on October 12, 1990.

On October 12, Sunnyside police obtained an order authorizing them to place a body wire on Mr. Cantu to transmit and record his conversations with Mr. Lopez and surveillance was set up at the Cantu residence, where the sale was to take place.

The officers involved in the operation were unable to obtain 10 pounds of marijuana of the quality of the sample given to Mr. Lopez and instead provided Mr. Cantu with 10 pounds of lower quality marijuana for the sale to Mr. Lopez.

At approximately 7:30 p.m. surveillance officers observed Mr. Lopez arrive at the Cantu residence in a pickup, get out of the pickup, and, with Mr. Cantu, enter the garage. Although the quality of the transmissions from the body wire on Mr. Cantu was poor, surveillance officers were able to hear enough of the conversation between Mr. Cantu and Mr. Lopez to reveal they were discussing the transaction and that Mr. Lopez was angered by the lower quality of the marijuana being offered to him.

Following what officers described as a heated conversation in the garage, Mr. Cantu returned to the residence to obtain the marijuana. He explained to the officers inside that due to the lower quality of the marijuana, Mr. Lopez had agreed to purchase 6, rather than 10, pounds.

While Mr. Cantu was in the house obtaining the marijuana, surveillance officers observed Mr. Lopez return to his pickup, get in, do something in the vehicle below the dashboard level for a few moments, and then return to the garage.

When Mr. Cantu returned to the garage with the marijuana, listening surveillance officers noted that "things became heated". At that point the officer in charge of the operation, Detective Sergeant Edwin Radder, became concerned about Mr. Cantu's safety and directed the other officers to enter the garage and arrest Mr. Lopez.

While other officers were arresting and securing Mr. Lopez 50 to 60 feet from the pickup, Sergeant Radder looked into the pickup to determine that no other persons were in the cab or canopy and then opened both doors of the cab and leaned in both sides far enough to see under the seat "to see if there was something that would discern to me what it was that Mr. Lopez had done in the cab of that vehicle".

After determining that no persons were in the pickup, Sergeant Radder leaned through the open doors to check under the seat and found a brown paper bag on the center hump pushed partially back under the seat. He looked into the bag and could see that it contained a large bundle of money. He did not remove the paper bag or anything else from the pickup, which was driven by an officer to city facilities where it could be secured. Sunnyside police then obtained a search warrant for the pickup based upon an affidavit which recited Mr. Lopez' arrival in the pickup at the Cantu residence, his examination and negotiation of the marijuana, and Sergeant Radder's observation of the paper bag on the floorboard containing a quantity of money.

In a search of the pickup, a marijuana cigarette, a triple beam scale containing marijuana residue, and the paper bag containing $4,800 in cash were seized.

Mr. Lopez moved to suppress the evidence obtained by use of the concealed body wire and the evidence obtained in the search of the pickup. The trial court denied the motion to suppress and, based upon stipulated facts, found Mr. Lopez

guilty of attempted possession of a controlled substance, marijuana, with intent to deliver.

## I

Mr. Lopez challenges the trial court's denial of suppression of evidence obtained through use of the body wire on Mr. Cantu, arguing that the application for an order authorizing the body wire was deficient in that it failed (1) to inform the court of a recent arrest of Mr. Cantu for a drug offense and (2) to show that normal investigative techniques had been tried and failed or reasonably appeared unlikely to succeed or to be too dangerous, as required by RCW 9.73-.130(3)(f).

The order authorizing the body wire was obtained pursuant to RCW 9.73.090(2),[1] the 1-party consent statute which permits law enforcement officers to intercept, transmit, or record a conversation when one party consents thereto and a judge or magistrate authorizes the interception, transmission or recording upon a finding of probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony.

When, as in this case, probable cause is premised upon information provided by an informant, the application affidavit must contain information from which the court can determine (1) the reliability of the informant's information, *i.e.*, the basis of the informant's knowledge, and (2) the credibility or veracity of the informant. *State v. Jackson*, 102

---

[1]RCW 9.73.090(2) provides in pertinent part:

"It shall not be unlawful for a law enforcement officer acting in the performance of the officer's official duties to intercept, record, or disclose an oral communication or conversation where the officer is a party to the communication or conversation or one of the parties to the communication or conversation has given prior consent to the interception, recording, or disclosure: PROVIDED, That prior to the interception, transmission, or recording the officer shall obtain written or telephonic authorization from a judge or magistrate, who shall approve the interception, recording, or disclosure of communications or conversations with a non-consenting party for a reasonable and specified period of time, if there is probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony . . .".

Wn.2d 432, 688 P.2d 136 (1984); *State v. Knight*, 54 Wn. App. 143, 772 P.2d 1042, *review denied*, 113 Wn.2d 1014 (1989).

In this case, Mr. Lopez challenges only satisfaction of the requirement that the credibility or veracity of the informant be established.

The application for an order authorizing the body wire, submitted in the form of an affidavit by Sunnyside police officer Darrell Merry, contained the following information:

> Since July of 1990 Gregorio Cantu has been involved in several narcotics transactions with the Sunnyside Police Department. Cantu has assisted the Sunnyside Police Department by posing as a seller of controlled substances, cocaine, to individuals he has had prior dealings with involving controlled substances. Upon Cantu delivering controlled substances to these individuals they have been taken into custody by the Sunnyside Police Department and other assisting agencies. As a result of these transactions seven subjects have been taken into custody. Additional arrests on conspiracy charges would have been possible had a recording of the conversations been available.

■ The recitation of Mr. Cantu's past successful assistance to the Sunnyside Police Department in controlled sales of cocaine leading to arrests establishes a "track record" of reliability that is sufficient in itself to establish his credibility. *State v. Wolken*, 103 Wn.2d 823, 700 P.2d 319 (1985); *State v. Colin*, 61 Wn. App. 111, 809 P.2d 228, *review denied*, 117 Wn.2d 1009 (1991). The specific identification of Mr. Cantu by name in the affidavit is an additional factor supporting a determination of credibility. *State v. Lair*, 95 Wn.2d 706, 630 P.2d 427 (1981); *State v. Estorga*, 60 Wn. App. 298, 803 P.2d 813, *review denied*, 116 Wn.2d 1027 (1991).

Mr. Lopez contends that the application should additionally have advised the court of the facts that Mr. Cantu had prior drug convictions in 1982 and 1989 and had been arrested in Sunnyside and charged with possession of cocaine with intent to deliver approximately 3 months prior to the application and argues that the absence of such information causes Mr. Cantu to appear to be a citizen informant.[2]

---

[2] It seems doubtful that a magistrate reading the affidavit's reference to Mr. Cantu's prior involvement as a police informant in drug transactions with "indi-

■ However, reference in the affidavit to Mr. Cantu's pending charge would, if anything, likely tend to further support a finding of reliability and veracity. The fact that an informant provides information following arrest has been recognized as an indicia of his credibility. *State v. Bean*, 89 Wn.2d 467, 572 P.2d 1102 (1978); *State v. Estorga, supra*. In *Bean* and *Estorga*, promises by the State of leniency in exchange for the information were made and the information included specific statements against penal interest. In this case, as in those cases, motivation to be truthful with the police is enhanced by the existence of a pending charge. *State v. O'Connor*, 39 Wn. App. 113, 121, 692 P.2d 208 (1984), *review denied*, 103 Wn.2d 1022 (1985):

> [O]ne who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys. Thus, where the circumstances fairly suggest that the informant "well knew that any discrepancies in his story might go hard with him," that is a reason for finding the information reliable. In such a situation, it is the "clearly apprehended threat of dire police retaliation should he not produce accurately" more so than the admission of criminal conduct which produces the requisite indicia of reliability.
>
> (Footnotes omitted.)

(quoting 1 W. LaFave, *Search and Seizure* § 3.3, at 528-29 (1978)).

We conclude that the application affidavit was sufficient to support a conclusion that Mr. Cantu was reliable and credible.

Mr. Lopez also contends that the application for the order authorizing a body wire did not meet the requirements of RCW 9.73.130 which provides:

> Each application for an authorization to record communications or conversations pursuant to RCW 9.73.090 as now or hereafter amended shall be made in writing upon oath or affirmation and shall state:
>
> . . . .
>
> (3) A particular statement of the facts relied upon by the applicant to justify his belief that an authorization should be issued, including:

---

viduals he has had prior dealings with involving controlled substances" would conclude Mr. Cantu was nothing more than a voluntary citizen informant.

. . . .

(f) A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ;

The application affidavit in pertinent part states as follows:

Based on the previous transactions the deal will take place in the garage at the Cantu residence. Due to the geographic setting officers will be unable to locate themselves in such a manner as to be unable [*sic*] to monitor any conversations without electronic devices.

. . . .

(f) Successful prosecution of this type of case requires proof of knowledge contained in a verbal exchange. Other normal investigative methods to obtain evidence of the conversations, such as stationing an officer close enough to overhear the conversation appears unlikely to succeed due to the location being of necessity to be agreed to by the drug buyer and subject to changes. It is anticipated that Gregorio Cantu's credibility would be a primary issue in subsequent proceedings. Possession of this verbal exchange (between Gregorio Cantu and Domincio [*sic*] Lopez), in the form of a recording can resolve any issue as to exactly what was said, by whom, and in what context things were said. Thus a "swearing contest" between Gregorio Cantu and Domincio [*sic*] Lopez could be avoided in subsequent court proceeding, and Gregorio Cantu will have his credibility enhanced.

Possession of the record of an actual conversation may also negate any defense of entrapment. Finally the intercept will help protect the safety of the participants.

■ In discussing the requirements of RCW 9.73.130(3)(f), this court noted in *State v. Knight, supra* at 150-51:

The issuing judge has "considerable discretion" to determine whether the statutory safeguards have been satisfied. The reviewing court's role is not to review the application's sufficiency de novo, but "to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.), *cert. denied*, 431 U.S. 960, 53 L. Ed. 2d 278, 97 S. Ct. 2687 (1977).

(Citations omitted.)

In this case, the application reflects consideration of other techniques and adequately informs the court of the likelihood of their inadequacies.

The positioning of an officer so as to observe and hear the transaction without aid of an electronic device was unlikely to succeed because previous transactions at the Cantu residence had occurred in the garage where unaided surveillance was not possible and because the exact location of the transaction was subject to change and would require the buyer's agreement. In view of the offense anticipated in the application, conspiracy to possess marijuana with intent to deliver, a recording of the conversation between Mr. Lopez and Mr. Cantu would be of critical evidentiary importance. Requirements or difficulties of proof inherent in the crime alleged are appropriately considered by the issuing judge. *State v. Knight, supra* at 151 (citing *United States v. Santarpio*, 560 F.2d 448, 452 (1st Cir.), *cert. denied*, 434 U.S. 984, 54 L. Ed. 2d 478, 90 S. Ct. 609 (1977)).

Additionally, the application recited the need for electronic surveillance to enhance Mr. Cantu's credibility and avoid a "swearing contest" and to rebut possible allegations of entrapment. Similar justifications were upheld as a basis under RCW 9.73.130(3)(f) for an electronic intercept order in *State v. Cisneros*, 63 Wn. App. 724, 821 P.2d 1262, *review denied*, 119 Wn.2d 1002 (1992).

We hold that the facts set forth in the application were adequate to support the court's issuance of the electronic intercept order.

## II

Mr. Lopez also challenges the trial court's refusal to suppress evidence found in a search of his pickup pursuant to a search warrant. He contends that the warrantless search of the cab of the pickup by Sergeant Radder prior to its being driven to the station was unlawful and that reference in the affidavit for the search warrant to Sergeant Radder's observation during his prior warrantless search of the paper bag containing money tainted the warrant and rendered the search conducted pursuant to it unlawful.

This issue requires focus upon the validity of Sergeant Radder's initial warrantless search of the cab of the pickup.

The probable cause recited in the affidavit for the search warrant includes reference to Sergeant Radder's observation of the paper bag on the floor of the pickup containing "a quantity of money".[3]

If Sergeant Radder's initial warrantless search of the pickup cab was unlawful, evidence illegally obtained in the course of that search cannot be used to establish probable cause for the subsequent search warrant. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *McNear v. Rhay*, 65 Wn.2d 530, 398 P.2d 732 (1965); *State v. Moore*, 29 Wn. App. 354, 628 P.2d 522, *review denied*, 96 Wn.2d 1003 (1981).

■ Under both the fourth amendment to the United States Constitution and article 1, section 7 of the Washington Constitution, searches conducted without a warrant are, per se, unreasonable and therefore unlawful unless they fall within a specifically established and well delineated exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). The State has the burden of showing that the search falls within one of the exceptions. *State v. Houser*, 95 Wn.2d 143, 622 P.2d 1218 (1980).

One such exception, here relied upon by the State, is the so-called "automobile exception", which is in this case more accurately an extension of the exception permitting warrantless searches incident to lawful arrests.

The State contends that Sergeant Radder's warrantless search of the cab of the pickup was permissible under the automobile exception as defined in *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986).

---

[3]The affidavit stated the following probable cause:

"That on 10-12-90 at approx 1930 hrs Nemecio Lopez arrived in the above vehicle at 90 Woodworth Road, Grandview. He was there for the purchase [*sic*] of purchasing 6 pounds of marijuana. Lopez was taken into custody after he had examined the marijuana and was negotiating on the price.

"Upon Lopez being arrested the above vehicle was seized. Located on the floorboard of the above described vehicle is observed a paper sack containing a quantity of U.S. Currency. It is unknown what other evidence/monies are located in the vehicle, however it is believed that there could be additional monies, and/or documents pertaining to the distribution/possession of controlled substances."

Mr. Lopez argues that *Stroud* is factually distinguishable from the instant case[4] and requires that the actual exigencies present in this case be balanced against his constitutional privacy interests to determine whether the automobile exception applies.

We do not agree. A case by case analysis of the totality of circumstances to determine whether a warrantless automobile search is justified was expressly rejected by the *Stroud* court. "Weighing the 'totality of circumstances' is too much of a burden to put on police officers who must make a decision to search with little more than a moment's reflection." *Stroud*, at 151.

■ Instead, the court in *Stroud* recognized the inherent exigencies of danger to police officers and the possible destruction or removal of evidence arising from a vehicle's mobility[5] and undertook a balancing of those exigencies against the legitimate interests of privacy secured by Const. art. 1, § 7. Based upon that balancing, *Stroud*, at 152, drew a clear line for application of the automobile exception:

> During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.

---

[4]Even if a comparison of the circumstances in *Stroud* with those in this case was necessary, we fail to perceive any distinctions of significance. In both cases, the defendants were outside the vehicle when the police contacted and arrested them and were secured prior to the search of the vehicle. The exigencies in *Stroud* were no greater than those present in this case. Although the court in *Stroud* observed that the officers would also have been entitled to enter the car to retrieve a gun under the "plain view" exception, the search of the car was clearly approved as an automobile search incident to arrest.

[5]The *Stroud* court, in identifying those exigencies, noted that federal courts applying the automobile exception under a Fourth Amendment analysis have not distinguished between situations in which the suspect was handcuffed in a patrol car at the time of the search and situations in which the suspect was not actually in police custody at the time of the search. It is clear from the facts in *Stroud* and the rule enunciated by the court under the more extensive privacy protections of Const. art. 1, § 7, that the *Stroud* court also rejected that distinction.

There is no dispute that Mr. Lopez' arrest was based upon probable cause and was therefore lawful. Under the clear line drawn in *Stroud*, the contemporaneous search of his vehicle, including the paper bag located on the floor, was a permissible automotive search incident to the lawful arrest of its driver.

We hold that the officer's discovery of the bag of money in the course of his initial search of the pickup was lawful and reference to it in the subsequent affidavit for the search warrant did not taint the warrant. Accordingly, the trial court properly denied Mr. Lopez' motion to suppress the evidence seized in the search conducted pursuant to the warrant.

The conviction is affirmed.

MUNSON, J., and FARIS, J. Pro Tem., concur.

Review denied at 123 Wn.2d 1002 (1994).