6 P.3d 1245 (2000)
STATE of Washington, Respondent,
v.
Karen Leann PORTER, Appellant.
No. 24304-1-II.
Court of Appeals of Washington, Division 2.
September 1, 2000.
*1246 David Mathews Soukup, Thurston County Pros. Atty. Office, Olympia, for Respondent.
Rogert Mason Quillian, Thomas Doyle (Court Appointed), Olympia, for Appellant.
HOUGHTON, J.
Karen Leann Porter appeals her conviction of possession of pseudoephedrine with the intent to manufacture methamphetamine, arguing the trial court erred in refusing to suppress the pseudoephedrine obtained in a warrantless search of her van.[1] We agree that the search exceeded the permissible scope incident to the arrest of Porter's son, Charles, and, therefore, we reverse.

FACTS
On January 9, 1997, Tumwater Police Detective Anthony Gianesini observed Porter driving her van on Trosper Road in Tumwater. Porter's adult son, Charles, sat in the passenger seat next to her. Gianesini recognized both of them from prior incidents and he suspected that Charles had an outstanding warrant for his arrest. A computer warrants check confirmed Detective Gianesini's suspicion.
Gianesini did not attempt to stop the van himself. At the time, he was dressed in civilian clothes and was driving an unmarked police car. Instead, he called for a uniformed Tumwater police officer to make the arrest.
Meanwhile, Porter drove to a gas station, legally parked the van next to a pay telephone, and got out to place a call. Gianesini then saw the two occupants go the rear of the van, do "something which [he] really couldn't see," and close the van doors. Report of Proceedings at 8. According to Gianesini, Porter and Charles looked directly at him. Charles then re-entered the van, emerged with a leashed dog, and began walking along Trosper Road. Gianesini did not follow Charles. He chose to maintain his *1247 position, keeping both Charles and the van within sight.
A uniformed police officer arrived approximately 25-30 seconds later. The officer arrested Charles on the side of the road about 300 feet from the van. The officer searched Charles and discovered a small plastic bag containing methamphetamine. Charles was then handcuffed and placed in the back of the officer's patrol car.
Porter observed the arrest and walked from the van to the arrest location. She retrieved the dog from Charles and continued to walk it along the road away from the van. She did not return to the van.
The uniformed officer then drove to Porter's van where Gianesini was waiting. Acting without a warrant, Gianesini opened the van and saw items consistent with the manufacture of methamphetamine. The van was impounded and later, based upon Gianesini's observations, a search warrant was obtained authorizing a full search. The subsequent search revealed glass vials and plastic bags, which were later found to contain amounts of pseudoephedrine, a precursor to methamphetamine.
The State charged Porter with possession of pseudoephedrine with the intent to manufacture methamphetamine.[2] Porter moved to suppress the evidence seized from the van, arguing Gianesini's initial search could not be justified as a search incident to the arrest of her son. The trial court denied the motion. Porter appeals from her jury conviction.

ANALYSIS
Under article I, section 7, of our state constitution, warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. State v. Parker, 139 Wash.2d 486, 496, 987 P.2d 73 (1999); State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996). Exceptions to the warrant requirement are narrowly drawn and jealously guarded. Parker, 139 Wash.2d at 496, 987 P.2d 73; Hendrickson, 129 Wash.2d at 71, 917 P.2d 563. In each case, the State bears the burden of showing that a warrantless search falls within an exception. Parker, 139 Wash.2d at 496, 987 P.2d 73.
One exception to the warrant requirement is a search incident to an arrest. State v. Johnson, 128 Wash.2d 431, 447, 909 P.2d 293 (1996). The rationale underlying a search incident to arrest is the need to prevent the arrestee from obtaining a weapon or disposing of evidence. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Johnson, 128 Wash.2d at 447, 909 P.2d 293. Thus, police officers are permitted, after a lawful custodial arrest, to search an "arrestee's person and the area `within his immediate control.'" Chimel, 395 U.S. at 763, 89 S.Ct. 2034; see also Johnson, 128 Wash.2d at 451, 909 P.2d 293. Where an arrest is initiated in or near a motor vehicle, however, the permissible scope of a search incident to an arrest is governed by State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986); see also New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
In Stroud, the police interrupted an attempted theft of an outdoor vending machine. When the police arrived, one of the defendants was standing beside the vending machine, while the other stood a couple of feet away in the "swing of the open passenger door" of their parked car. Stroud, 106 Wash.2d at 145, 720 P.2d 436. After the two men were arrested, and placed in the back of a patrol car, the police searched the car and found methamphetamine. In determining that the search was valid, our Supreme Court announced the following as the proper scope of an automobile search incident to an arrest:
During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove *1248 compartment, they may not unlock and search either container without obtaining a warrant.[[3]]
Stroud, 106 Wash.2d at 152, 720 P.2d 436.
The decisions following Stroud have not fully developed its potential limitations. Where a driver or passenger is arrested and removed from a vehicle, an officer may validly search the entire compartment area. Stroud, 106 Wash.2d at 152, 720 P.2d 436. Implicitly, under the facts of Stroud, a defendant's close proximity to an unlocked vehicle also will allow an officer to search the vehicle incident to an arrest.[4]Stroud, 106 Wash.2d at 152, 720 P.2d 436. Remaining unanswered by Stroud is the question currently before this court, that is, whether an officer may search a vehicle incident to an arrest where the former occupant is arrested some distance from the vehicle.
Subsequent decisions in our state have yet to provide a clear answer to this question.[5] In State v. Fore, 56 Wash.App. 339, 783 P.2d 626 (1989), review denied, 114 Wash.2d 1011, 790 P.2d 168 (1990), Division One recognized that a valid vehicle search incident to an arrest requires a "close physical... proximity," but the court was not required to define the "outer boundaries of a permissible vehicle search incident to an arrest." Fore, 56 Wash.App. at 347-48, 783 P.2d 626. In that case, the defendants were "sufficiently proximate" to the searched vehicle to preclude any meaningful distinction between it and Stroud. Fore, 56 Wash.App. at 348, 783 P.2d 626.
We believe the outer boundary of a permissible vehicle search incident to the arrest of a former occupant may be found in the decision upon which Stroud was based. In New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, the Supreme Court addressed the applicability of Chimel to automobiles. The Court first noted the difficulty lower courts had encountered in applying Chimel's principles to searches of automobiles incident to the arrest of a vehicle occupant. See Belton, 453 U.S. at 458-60, 101 S.Ct. 2860; see generally, 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 7.1(a) (2d ed.1987). In order to provide law enforcement with a "bright line" in such situations, the Belton court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile[,]" including the inside of any closed containers. Belton, 453 U.S. at 460, 101 S.Ct. 2860 (footnotes omitted).
In articulating this rule, the Court sought to avoid case-by-case evaluations as to what constituted an arrested vehicle occupant's area of "immediate control." Belton, 453 U.S. at 454, 101 S.Ct. 2860. The Court reasoned that because "articles inside the relatively narrow compass of the passenger compartment of an automobile are ... generally, if not inevitably, within" the "immediate control" of an occupant, the police may search the entire interior of an automobile from which an arrestee has been removed. Belton, 453 U.S. at 460, 101 S.Ct. 2860.
In Stroud, our Supreme Court adopted the federal test subject to the greater protections of our own constitution, which precludes a search into locked containers. Stroud, 106 Wash.2d at 151, 720 P.2d 436. *1249 Stroud, like Belton, was meant to provide police officers with a "bright line" rule allowing them to search the interiors of vehicles that were within the area of the arrestee's immediate control at the time the police initiate an arrest. Stroud, 106 Wash.2d at 151, 720 P.2d 436; State v. Boyce, 52 Wash.App. 274, 277, 758 P.2d 1017 (1988). Thus, if the police initiate an arrest and the passenger compartment of a vehicle is not within an arrestee's area of "immediate control," Stroud does not apply.[6]
Applying this reasoning here, the search of the van was impermissible. At the time the police initiated the arrest, Charles was 300 feet from Porter's van. At such a distance Charles had no opportunity to destroy evidence or obtain a weapon from inside the van. It would be unreasonable to conclude that the van was within his area of "immediate control." Although the officer had the authority to arrest him while he was in the vehicle, the arrest did not occur until he was walking along the street. When the officer arrested Charles, a proper search of his person was conducted and a bag of methamphetamine was discovered. However, the record shows the van had no connection with the arrest. Nor did the officer have reason to believe that contraband would be found in the van. As Gianesini plainly testified, he "really couldn't see" what Charles and Porter were doing before the arrest. Therefore, the search exceeded its permissible scope.
Our holding requires a case-by-case evaluation of the proper scope of a search incident to an arrest. Consistent with Stroud, however, our holding does not require the police to demonstrate actual exigent circumstances to permit a search incident to an arrest. Stroud, 106 Wash.2d at 150-51, 720 P.2d 436; see Parker, 139 Wash.2d at 496-97, 987 P.2d 73 ("It is the fact of arrest itself that provides the `authority of law' to search, therefore making the search permissible under article I, section 7."). Where a valid custodial arrest occurs, police officers are not required to weigh whether the totality of the circumstances justifies a search incident to an arrest. Stroud, 106 Wash.2d at 150-51, 720 P.2d 436; Parker, 139 Wash.2d at 496-97, 987 P.2d 73. The totality of the circumstances will determine, however, the proper scope of the search. Police officers will have to determine whether a vehicle that the arrestee has recently occupied is within the area of the arrestee's immediate control at the time they initiate the arrest. See Fore, 56 Wash.App. at 347, 783 P.2d 626. If so, the scope of the search incident to the arrest may include the interior compartment of an unlocked vehicle. We see this task as being no different than determining the permissible area to search incident to an arrest in a home. As recently stated by our Supreme Court, "Officers in the field routinely make, often subtle, factual determinations of probable cause, articulable suspicion, and the like." Parker, 139 Wash.2d at 503, 987 P.2d 73.
Finally, the State relies upon Division Three's decision in State v. Lopez, 70 Wash. App. 259, 856 P.2d 390 (1993), review denied, 123 Wash.2d 1002, 868 P.2d 871 (1994), with which we respectfully disagree. In Lopez, the police observed the defendant arrive at the house of an informant to purchase marijuana. The defendant parked his pickup 50 *1250 to 60 feet from the informant's garage. During the transaction, police officers observed the defendant go to his pickup and do something below the dashboard level before returning to the garage. Upon his return to the informant's garage, the defendant was arrested. While other officers were securing the defendant, another officer opened the door of the defendant's pickup and found a paper bag with a substantial amount of money inside. Based upon the events of the transaction and the discovery of the money, a search warrant was issued and the police discovered amounts of marijuana.
Division Three upheld the search, finding that Stroud specifically rejected case-by-case determinations on whether automobile searches incident to arrest were justified. Lopez, 70 Wash.App. at 269, 856 P.2d 390. As we noted above, Stroud rejected any requirement that a search incident to an arrest be justified by exigent circumstances other than the arrest itself, but Stroud did not forbid a case-by-case evaluation as to the scope of the search. Under our reasoning, it is doubtful that we would have reached the same conclusion as our colleagues.
Here, the police exceeded the permissible scope of a valid search incident to the arrest of Charles because at the time the police initiated his arrest, Porter's van was not within the area of Charles' immediate control.
Reversed and remanded.
BRIDGEWATER, J., and HUNT, A.C.J, concur.
NOTES
[1] Porter also argues that she received ineffective assistance of counsel at trial. We do not reach this argument because of our decision regarding the search.
[2] RCW 69.50.440 provides in relevant part:

It is unlawful for any person to possess ephedrine or pseudoephedrine with intent to manufacture methamphetamine. Any person who violates this section is guilty of a crime and may be imprisoned for not more than ten years, fined not more than twenty-five thousand dollars, or both.
[3] This is not to say that all open containers within an automobile are subject to search. Our Supreme Court recently held that officers may not search incident to the arrest of a vehicle occupant those containers that an officer knows or should know belong to non-arrested occupants unless the officer possesses an independent, objective basis to believe that the container holds a weapon or evidence. Parker, 139 Wash.2d at 505, 987 P.2d 73.
[4] But police officers may not validly search a locked vehicle incident to the arrest of the driver. See State v. Perea, 85 Wash.App. 339, 345, 932 P.2d 1258 (1997).
[5] Stroud does have a temporal limit, in that the search must occur immediately after an arrest. Stroud, 106 Wash.2d at 152, 720 P.2d 436; see also State v. Simpson, 95 Wash.2d 170, 191, 622 P.2d 1199 (1980) (search of truck could not be justified as a search incident to arrest "because the [defendant] was not in the truck when arrested and had already been removed from the area when the search of the truck took place"); State v. Boyce, 52 Wash.App. 274, 278, 758 P.2d 1017 (1988) (holding that Stroud does not permit a vehicle search incident to an arrest after the defendant is physically removed from the scene of the arrest).
[6] We note that federal and state courts are split over this question. Some jurisdictions have applied Chimel rather then Belton when a police officer's initial contact with the arrestee occurs outside a vehicle. See, e.g., United States v. Hudgins, 52 F.3d 115, 119 (6th Cir.), cert. denied, 516 U.S. 891, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995); United States v. Strahan, 984 F.2d 155, 159 (6th. Cir.1993); Lewis v. United States, 632 A.2d 383, 386 (D.C.Cir.1993); State v. Foster, 127 Idaho 723, 905 P.2d 1032, 1038-39 (1995); Commonwealth v. Santiago, 410 Mass. 737, 575 N.E.2d 350, 353 (1991); People v. Femengel, 216 Mich. App. 420, 549 N.W.2d 361, 363 (1996), review denied, 520 U.S. 1110, 117 S.Ct. 1121, 137 L.Ed.2d 320 (1997); State v. Tompkins, 144 Wis.2d 116, 423 N.W.2d 823, 825-26 (1988). Other jurisdictions have permitted a Belton search incident to the arrest of a "recent occupant" that occurs near the vehicle. United States v. Snook, 88 F.3d 605, 608 (8th Cir.1996); United States v. Willis, 37 F.3d 313, 317 (7th Cir.1994); United States v. Franco, 981 F.2d 470, 472-73 (10th Cir.1992); State v. Wanzek, 598 N.W.2d 811 (N.D.1999); People v. Savedra, 907 P.2d 596, 599 (Colo.1995); People v. Bosnak, 262 Ill. App.3d 122, 199 Ill.Dec. 331, 633 N.E.2d 1322, 1326-27 (1994). Were we to agree with these latter authorities, we would be inclined to hold that Charles was not a "recent" occupant at the time of his arrest.