176 P.3d 605 (2008)
STATE of Washington, Respondent,
v.
Willis James QUINLIVAN Jr., Appellant.
No. 25796-7-III.
Court of Appeals of Washington, Division 3.
February 5, 2008.
*606 John Dietrich Knodell III, Attorney at Law, Teresa Jeanne Chen, Grant County Prosecutors Office, Ephrata, WA, for Respondent.
Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Appellant.
SWEENEY, C.J.
¶ 1 One of the "jealously guarded" exceptions to the general requirement of a search warrant is the search incident to arrest. The state Supreme Court established what has been called a "bright line rule" in State v. Stroud.[1] The rule is that police can search a vehicle incident to arrest without the authority of a search warrant. Here, a deputy sheriff stopped a pickup. The driver left the truck, locked it, and sat on a curb. He refused to give the deputy the keys to the truck. The deputy arrested him, seized the keys, searched the truck, and found drugs under a seat. The question here is whether the act of leaving the truck and locking it precludes the search incident to arrest authorized by the court in Stroud. We conclude that it does. And we reverse the conviction here for possession of methamphetamine.

FACTS
¶ 2 A Grant County sheriffs deputy stopped Willis Quinlivan because Mr. Quinlivan was not wearing a seat belt and because he was driving with a suspended driver's license. Mr. Quinlivan gave the deputy his driver's license and registration. He did not have proof of insurance. The deputy returned to his motorcycle. Mr. Quinlivan asked if his truck was going to be towed. The deputy told him it would be towed.
¶ 3 Mr. Quinlivan got out of the truck, locked it, put the keys in his pocket, and sat on the curb. The deputy then arrested him and asked for the keys to the truck. Mr. *607 Quinlivan refused. He told the deputy he would not give him the keys without a search warrant. The deputy responded that he needed the keys to have the truck towed and impounded. Mr. Quinlivan again refused and said he would not hand over the keys without a warrant. The deputy handcuffed Mr. Quinlivan and patted him down. The deputy retrieved the keys from Mr. Quinlivan's pocket, opened the locked truck, and searched it. He found methamphetamine under the driver's seat.
¶ 4 The State charged Mr. Quinlivan with possession of methamphetamine and third degree driving with a suspended license. Mr. Quinlivan moved to suppress the drug evidence seized from his truck. The court refused to suppress the evidence.
¶ 5 The court found Mr. Quinlivan guilty of both charges following a trial on stipulated facts.

DISCUSSION
¶ 6 The question presented is whether the deputy's search of Mr. Quinlivan's truck met the requirements set out in Stroud, as a search incident to arrest.
¶ 7 Mr. Quinlivan notes that he locked his vehicle before he was arrested. And from this he argues that under the rule set out in Stroud, the search was not incident to his arrest because he was out of the truck and the truck was locked before he was arrested. Mr. Quinlivan relies, on State v. Perea for the proposition that police cannot conduct a warrantless search of a car if the car is locked and the suspect has walked away before he, is arrested. State v. Perea, 85 Wash.App. 339, 932 P.2d 1258 (1997).
¶ 8 The State says that Stroud sets out a bright line rule. And the State argues that the deputy met the requirements of Stroud here. The State relies on State v. Fladebo as factually indistinguishable from Mr. Quinlivan's case. State v. Fladebo, 113 Wash.2d 388, 779 P.2d 707 (1989). The State argues that the only difference between Fladebo and the facts here is that Mr. Quinlivan locked the door to his truck before being arrested. And the State maintains that under a proper Stroud analysis, this is not a material distinction and certainly not one Mr. Quinlivan should be allowed to get away with. Resp't's Br. at 13.
DECISION UNDER REVIEW
¶ 9 The court entered a number of findings of fact, including the following:
2.10 As Deputy Sainsbury was headed back to the defendant's pickup, the defendant got out of the vehicle and locked the vehicle, putting his keys in his pocket and walked towards Deputy Sainsbury. Mr. Quinlivan then sat down on the curb after being told to get back in his vehicle. Deputy Sainsbury believes the Defendant was 6 to 15' from his truck where he sat down. The Defendant believes it was closer to 50'. Deputy Sainsbury believes this would have put the Defendant out of his field of vision.
2.11 When Deputy Sainsbury got to the defendant's position, he advised the defendant that he was under arrest and asked for the keys for the purpose of searching the truck incident [to] arrest. The defendant replied by telling Deputy Sainsbury that he did not want the pickup searched and that Deputy Sainsbury would need a search warrant to conduct the search.
2.12 Deputy Sainsbury also told Mr. Quinlivan he would need the keys to impound Mr. Quinlivan's truck. Mr. Quinlivan replied that the keys were not needed to impound the truck, To which Deputy Sainsbury stated he was going to search Mr. Quinlivan's truck. Mr. Quinlivan replied by telling Deputy Sainsbury that he did not want the pickup searched and that Deputy Sainsbury would need a search warrant to conduct the search. At that point Deputy Sainsbury again advised Mr. Quinlivan he was under arrest for DWLS [driving with license suspended]. Deputy Sainsbury then had Mr. Quinlivan stand up and handcuffed him.

*608 2.13 Deputy Sainsbury searched the defendant's person incident to arrest, retrieved the keys, unlocked the pickup and searched the pickup incident to arrest. Deputy Sainsbury did not, have a search warrant and did not attempt to obtain a search warrant.
Clerk's Papers (CP) at 34 (emphasis added).
¶ 10 The trial judge concluded from this that:
Deputy Sainsbury was entitled to search the passenger compartment of the Defendant's truck incident to his arrest.
CP at 35 (Conclusion of Law 3.4). And that is the decision we are asked to review. Whether that conclusion is correct is a question of law and so our review is de novo. State v. Hearn, 131 Wash.App. 601, 606, 128 P.3d 139 (2006).
STROUD'S "BRIGHT LINE" RULE
¶ 11 A warrantless search is per se unreasonable and can be justified only if it falls within one of the "jealously and carefully drawn" exceptions to the Fourth Amendment's general requirement of a warrant. Arkansas v. Sanders, 442 U.S. 753, 759, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980). One exception is the search of an automobile pursuant to a lawful custodial arrest. Stroud, 106 Wash.2d at 147, 720 P.2d 436. Under this exception, federal law permits the search of the entire passenger compartment, including any containers. New York v. Belton, 453 U.S. 454, 457, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Washington does not permit the search of locked containers in the passenger compartment. Stroud, 106 Wash.2d at 152, 720 P.2d 436.
¶ 12 The "bright line" rule set out by Stroud is:
During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.
Stroud, 106 Wash.2d at 152, 720 P.2d 436.
ARREST NECESSARY FOR THE SEARCH INCIDENT TO ARREST
¶ 13 State v. O'Neill is not helpful to the State because it is distinguishable on its facts. State v. O'Neill, 110 Wash.App, 604, 43 P.3d 522 (2002). There, after his initial seizure Mr. O'Neill was placed under arrest before he stepped from his truck. Mr. O'Neill was then handcuffed and placed in a patrol car before the arresting officer returned to discover Mr. O'Neill's truck was locked with the keys in the ignition. Id. at 606, 43 P.3d 522. Here, Mr. Quinlivan was unquestionably seized when he was stopped and told his truck was to be towed. But the trial court found that Mr. Quinlivan was not arrested by Deputy Sainsbury until after the deputy reached the curb where Mr. Quinlivan was sitting, and that was after Mr. Quinlivan had left and locked his truck.
¶ 14 The state Supreme Court, in State v. O'Neill (no relationship) made it clear that it is a lawful custodial arrest, and only that full lawful custodial arrest, that gives police the authority to search incident to an arrest. State v. O'Neill, 148 Wash.2d 564, 584-85, 62 P.3d 489 (2003). Probable cause to arrest or, for that matter, anything short of a full custodial arrest is not enough to confer "the authority of law" necessary to meet the narrow exception to the general requirement of a warrant. Id. And the Supreme Court has previously said the same thing in State v. Parker in a different context: "It is the fact of arrest itself that provides the `authority of law' to search, therefore making the search permissible under article I, section 7." State v. Parker, 139 Wash.2d 486, 496-97, 987 P.2d 73 (1999).
¶ 15 The cases out of Division Two of this court have articulated and applied this narrow search incident to arrest exception in a way that honors both of the United States Supreme Court's holdings in Belton and Chimel.[2] *609 A brief review of these cases suggests to us that Division Two has correctly applied this exception, which again has been described as narrowly applied and jealously guarded. Stroud, 106 Wash.2d at 147, 720 P.2d 436.
APPLICATION OF STROUD
¶ 16 First of all, in Stroud the court "weighed the privacy interests individuals have: in items within their automobile and the dangers to the officers and law enforcement presented during an arrest of an individual inside an automobile Id. at 149-50, 720 P.2d 436 (emphasis added). The rule articulated in Stroud is based upon its federal antecedents and is only modified because of the heightened privacy protection we recognize because of article I, section 7 of our state constitution; we prohibit police from searching locked containers in a passenger compartment. Id. at 152, 720 P.2d 436. What Stroud did not change from the federal rule was the necessity for an arrest as the event triggering police authority for the search without a warrant. Id. at 150, 720 P.2d 436.
¶ 17 In State v. Fore, Division One of this court concluded, based on Stroud, that for the search to be valid incident to arrest requires only "a close physical and temporal proximity between the arrest and the search." State v. Fore, 56 Wash.App. 339, 347, 783 P.2d 626 (1989). The court in Fore relied on the state Supreme Court case of Fladebo for the proposition that "the validity of a Stroud search does not depend on an arrestee being in the vehicle when police arrive or on the physical ability of an arrestee to reach into the vehicle." Id. at 347, 783 P.2d 626. But as the court noted in State v. Johnston, it is unclear how far the defendants (in Fore) were from the automobile and whether the vehicle's doors were open or closed at the time of the arrest. State v. Johnston, 107 Wash.App. 280, 287-88, 28 P.3d 775 (2001). And that concern aside, we are not sure that the conclusion reached in Fore necessarily follows from the court's analysis in Fladebo.
¶ 18 There were two essential arguments in Fladebo. First, Ms. Fladebo argued that her purse was a container entitled to the same privacy as the locked containers referred to in Stroud. Fladebo, 113 Wash.2d at 395, 779 P.2d 707. The Supreme Court disagreed and said that a purse was not entitled to the same protection as a locked container. Id. Ms. Fladebo then argued that any reason for the protective search disappeared after she was placed securely in the back of a squad car. Id. at 396-97, 779 P.2d 707. The court concluded that Stroud expressly allowed the search even though the risk of injury to the officer or destruction of evidence (the traditional justification for a search incident to arrest) had been eliminated by placing the defendant in the back of the patrol car. Id. at 397, 779 P.2d 707.
¶ 19 But from the factual recitation set out in Fladebo, it appears that the defendant was arrested while still in or near her open car. Id. at 390, 779 P.2d 707. Neither the factual recitation nor the analysis in Fladebo addressed this issue. We assume the court did not address it because it was not raised. So it is difficult for us to conclude, as the court did in Fore, that the Stroud exception "does not depend on an arrestee being in the vehicle when police arrive." Fore, 56 Wash.App. at 347, 783 P.2d 626. More information about Ms. Fladebo (was she in or near the car) and the car (was the door open or unlocked) would be necessary to draw that conclusion in any event, Fladebo certainly stands for the proposition that police can search even when the defendant is securely held in a police car.
¶ 20 Division Two has held that reasonable access to the car is an essential preliminary to a valid Stroud search.
¶ 21 In Perea, an officer knew that defendant Perea's license was suspended. Perea, 85 Wash.App. at 340-41, 932 P.2d 1258. He saw Mr. Perea driving and radioed another officer to stop Mr. Perea. Id. at 341, 932 P.2d 1258. The second officer caught up *610 with Mr. Perea just as Mr. Perea entered his driveway. The officer activated his emergency lights as he pulled in behind Mr. Perea. Id. Mr. Perea ignored the lights and the officer's orders to return to his car and started toward his house. Id. The officers seized Mr. Perea, handcuffed him, took his car keys, and then searched his car. Id. The Court of Appeals concluded that Mr. Perea acted lawfully "when he got out and locked his car," and the seizure did not occur until after he had locked the car. Id. at 344, 932 P.2d 1258. The court then reversed the order denying Mr. Perea's motion to suppress evidence discovered in the search of his car. Id. at 345, 932 P.2d 1258. The court in Perea suggested that the result would have been different if "Perea remained in his car or beside his car, with the door open or unlocked, until he was arrested." Id. at 344, 932 P.2d 1258.
¶ 22 In State v. Porter, the court addressed, a question "[r]emaining unanswered by Stroud . . . whether an officer may search a vehicle incident to an arrest where the, former occupant is arrested some distance from the vehicle." State v. Porter, 102 Wash.App. 327, 332, 6 P.3d 1245 (2000). There, a detective saw Ms. Porter driving her van; her son Charles was in the passenger seat. Id. at 329, 6 P.3d 1245. Charles had outstanding warrants. The detective called a uniformed officer to seize Charles. Ms. Porter parked the van. Charles got out and started walking a dog. Id. The uniformed officer arrested Charles; he was by that time some 300 feet from the van. Id. Ms. Porter saw the arrest, walked to the arrest location, retrieved the dog, continued to walk, and did not return to the van. Id. The trial judge refused to suppress drug evidence seized from the van. Id. at 330, 6 P.3d 1245. The court reversed concluding: "Thus, if the police initiate an arrest and the passenger compartment of a vehicle is not within the errestee's area of `immediate control,' Stroud does not apply." Id. at 333, 6 P.3d 1245.
¶ 23 In Johnston, the court observed that, "[i]n State v. Stroud, the Washington Supreme Court followed Belton except for locked containers." Johnston, 107 Wash. App. at 285, 28 P.3d 775 (footnote omitted). Belton established the bright line rule that permits police to search a passenger compartment incident to arrest that the defendant had occupied. Johnston, 107 Wash. App. at 285, 28 P.3d 775 (citing Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768). The court in Johnston reversed the trial court's refusal to suppress drug evidence seized from the car because the State failed to show that the defendant had "ready access to the passenger compartment at the time of arrest." Johnston, 107 Wash.App. at 285-87, 28 P.3d 775 (emphasis omitted).
¶ 24 In State v. Rathbun, the defendant ran about 40 to 60 feet away from the truck he was working on as police approached. State v. Rathbun, 124 Wash.App. 372, 375, 101 P.3d 119 (2004). Police gave chase and seized him away from the truck. The police then searched his truck incident to the arrest. Id. The court rejected arguments that the search incident to the arrest was proper because the defendant had access to the truck immediately before his arrest. Id. at 378, 101 P.3d 119. The court concluded that the essential question was whether the vehicle was in his immediate control at the time of his arrest. Id. The court also rejected the State's argument that the defendant should not be able to avoid a search by fleeing. Id. at 378-79, 101 P.3d 119. In sum, the court held that "[i]f a suspect flees from a vehicle so that the vehicle is no longer within his or her immediate control at the time of arrest, the exigencies supporting a vehicle search incident to arrest no longer exists and there is no justification for the police to search the vehicle without first obtaining a warrant." Id. at 380, 101 P.3d 119.
¶ 25 Here, the uncontested findings are that Mr. Quinlivan got out of his truck, locked that truck, and walked some distance away from it to sit on a curb. Only then was he arrested by police. At that time, he did not have access to the passenger compartment of his car. As in Johnston, "[t]he State does not rely on any other exception to the warrant requirement." 107 Wash.App. at 289, 28 P.3d 775. And, accordingly, police needed a warrant in order to search that vehicle incident to his arrest.
*611 ¶ 26 We therefore reverse Mr. Quinlivan's conviction for possession of methamphetamine.
WE CONCUR: BROWN, J., and STEPHENS, J. Pro Tern.
NOTES
[1] State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986).
[2] Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768; Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).