[No. 18388–5–I.   Division One.   September 19, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR S.
LONGWORTH, *Appellant.*

454

Anna–Mari Sarkanen of Washington Appellate Defender Association, for appellant.

Norm Maleng, Prosecuting Attorney, and Seth Aaron Fine, Deputy, for respondent.

SWANSON, J.—Arthur S. Longworth appeals his jury conviction of aggravated first degree murder in violation of RCW 9A.32.030(1)(a) and 10.95.020(7). The issues he raises are whether the trial court erred in failing to specify in the jury instructions the crime that the murder allegedly was committed to conceal, whether the general verdict and special interrogatory responses are inconsistent, and whether sufficient evidence supports a finding of the aggravating circumstance and the premeditation element of aggravated first degree murder.

In her spare time 25–year–old Cynthia Nelson had been engaged in Amway sales which involved attempting to get people to work under her. At 11:30 a.m. on Friday, February 15, 1985, Nelson had a telephone conversation at work with a man that she had taken to an Amway rally some time before.

Nelson told two co–workers that she was going to meet this man and his sister that afternoon so that she could explain the Amway plan to his sister. Nelson later told Joan Ayers, an Amway associate, about the man and his sister and indicated that she had previously worked with the man at an accounting firm. In August and September 1984, Longworth had worked as a temporary laborer at an accounting firm where Nelson was then employed and was supervised by Nelson. At about 3:30 p.m. Nelson called her aunt, Edna Watters, to ask if she could have her telephone calls forwarded to her aunt's home. She indicated that she would be gone for only a couple of hours. She never called Watters back.

At about 7:30 p.m. on February 15, 1985, Wilber Beste, who works at the Waterbed Store on Northeast 45th Street in Seattle, Washington, discarded some broken toys in a dumpster in the store's parking lot. At about 9 the next morning when Beste went to retrieve the broken toys for use in an art project, he found a purse hidden in the cardboard box. Inside the purse were a checkbook, wallet, gas receipt, driver's license, credit card and a glove. Cynthia Nelson's name was on the identification in the purse. Jackie Cuddy, the store manager, called a telephone number obtained from the identification and after talking with Edna Watters, Nelson's aunt, had Beste call the police.

Seattle Police Officer Larry Harvey, who responded to the call, found inside the purse a datebook with the entry, "Four o'clock, Art Langworth, Pancake House, Desry." In the purse was a note with the notation, "Art and Desry, 4536 Eastern Avenue North, Seattle. Phone number 634–1577, boarding house, Pancake House." Officer Harvey called the number and asked for Art "Langworth" or

"Longworth." Harvey told the person who came to the telephone that Nelson's personal effects indicated that Longworth had a 4 o'clock appointment with her the previous day. The person responded that Nelson had not shown up and said that Desiree was his sister. Harvey told the person to contact him if he heard from Nelson.

On Saturday morning, February 16, 1985, a jogger found Nelson's body floating in the Little Pilchuck River in Snohomish County, Washington. Dr. Clayton Haberman, a pathologist, conducted an autopsy on the body, which was clothed in a dress, a gray belted coat, leather boots, undergarments and a medallion on a chain. In the back of the body was a stab wound about an inch wide and 8 inches long, extending at a sharp angle downward. The knife had severed the lower edge of the 10th rib and penetrated the diaphragm, liver and right kidney and had cut through the cloth and belt of the victim's coat. The brassiere was unhooked, and, according to Dr. Haberman, had it been hooked, it would have covered the wound. Tests showed no evidence of sexual intercourse. Nelson had a bruise on her right forearm near the wrist.

On Friday evening, February 15, 1985, Connie Mohar and her 16–year–old daughter, Stacy, who live near the Little Pilchuck River in Snohomish County, were driving near the bridge which crosses the river when they saw a blue car parked off the side of the road. In the illumination of the car lights, Mohar saw a man walk toward the back of the parked car, fixing his belt. With their car going about 15 miles per hour, Mohar and Stacy, who was driving, saw a tall, thin man with light hair who was wearing jeans or dark pants and possibly a plaid shirt.

On February 20, 1985, out of a 6–photograph montage Mohar selected Longworth's photograph as that of the man she had seen near the Little Pilchuck River. When shown the montage, Stacy initially picked two photographs, then chose Longworth's photograph. At trial Mohar positively identified Longworth as the man she had seen on February

15, 1985. Stacy testified that Longworth resembled the person she had seen, but she was not sure of the identification.

On February 18, 1985, Nelson's blue Datsun car, with the keys in the ignition, was found near the freeway off ramp in the University District of Seattle. Two fingerprints which were lifted from the outside passenger door of Nelson's car were later positively identified as Longworth's. Underneath the rear floor mat was a diamond ring that Nelson always wore. Two earring backings were on the front floor on the passenger side. Nelson's aunt said that Nelson always wore earrings. A blue button was found on the rear floor mat. Also found in the car were a pair of gloves and a single glove which matched the glove found in the dumpster. An umbrella with bloodstains was on the front floor and the passenger seat was bloodstained.

On February 19, 1985, a search warrant was served on the boarding house in the University District where Longworth lived. Seized were a blue button found in a nightstand drawer, tennis shoes, a pillow case and a note, in Nelson's writing, with her name and telephone number on it.

On February 21, 1985, the police went to Nelson's previously secured apartment, which did not appear to be disturbed. The police were unable to find a pearl ring which Nelson always wore or a garment with buttons similar to the button found in Nelson's car. A 1984 appointment book was found with an October 1, 1984, entry in Nelson's handwriting which read, "Art Longworth 7:00 43rd & Brooklyn Pancake House."

Eighteen–year–old Brian Blehm testified that when Longworth, whom he had known for about 3½ years, went to see him on a Saturday night in the middle of, or late, February 1985, Longworth had been served with a search warrant for homicide and said that he was in trouble. Longworth told Blehm the following account: Longworth had met a girl he had known for a little while at the International House of Pancakes in the University District while

his friends were supposed to be "robbing" the girl's house. They drove around for awhile. When the girl found out what was going on and started running down the street, Longworth chased after her and put her back in the car, where one of his friends held her. They started driving around and decided to get rid of her because she knew Longworth. Longworth stabbed her in the back while one of his friends held her; then they dumped the body in a river and drove back to Seattle, where Longworth parked the car underneath the bridge in the University District. Long-'worth went home, took off his clothes and threw the knife wrapped in his clothing in a dumpster several blocks away.

According to Blehm, Longworth wanted him to provide an alibi for the time between 5:30 and 9 that night. Longworth told him to say that when a girl that Longworth was supposed to meet at the Pancake House did not show up, he called Blehm and the two drank some beer, played video games and then went home. Blehm said he would think about it. The next day Longworth came over and wrote on a piece of paper the description of a guy who was supposed to have bought them some beer that night. Blehm told him that he was still thinking about it. Later Longworth called him, and Blehm said that he would do it.

Shawn Rohrbach, Longworth's friend, testified that in December 1984, Longworth bought a knife with a 6– to 7–inch long and 1–inch wide blade with a serrated edge. Longworth was working nights at the time and said that he needed the knife at night. Rohrbach testified that he and Longworth had hiked in the Mount Pilchuck area in Snohomish County and that Longworth owned a blue shirt with blue buttons. In March 1985 Longworth called Rohrbach and discussed Nelson's death. Longworth said that Nelson had not shown up for an appointment with him so he had gone home, had dinner, then gone out with Brian Blehm and returned home again at 8:30 or 9 p.m.

Longworth testified that he did not kill Nelson. According to him, he last saw Nelson on Wednesday, February 13, 1985, and had an appointment with Nelson at the Pancake

House on February 15, 1985, but did not see her. Longworth had planned to meet Nelson with his sister, Desiree, and had left messages for Desiree, but she never called him. Longworth admitted having met with Nelson in the fall of 1984, when Nelson brought up the subject of Amway. After his room was searched, Longworth talked to a lawyer and, according to him, learned for the first time that Nelson was dead.

Expert testimony indicated that bloodstains on the umbrella in Nelson's car and on the glove found in the dumpster were consistent with Nelson's blood. There was conflicting testimony as to whether some of the blood on the pillowcase taken from Longworth's room was consistent with only Longworth's blood or a possible mixture of Nelson's and Longworth's blood.

The cast of a tire tread impression at the Little Pilchuck River where Nelson's body was found corresponded to one of the tires from Nelson's car but there was no certainty that the tire had made the impression. An FBI agent who analyzed the buttons found in Nelson's car and in Longworth's room concluded that they were made by the same manufacturer and with the same chemical formulation, but acknowledged that an average batch involves millions of buttons.

A jury convicted Longworth of aggravated first degree murder as charged upon a special finding that the murder was committed with the intent to conceal a crime or to protect or conceal the identity of a person committing a crime. A motion for arrest of judgment and for a new trial was denied and Longworth was sentenced to life imprisonment without the possibility of parole.

## JURY INSTRUCTIONS

The "to convict" instruction for aggravated first degree murder which was given in the instant case sets forth the alternate aggravating circumstances as follows:

(5) That the murder was committed:
  (a) in the course of, in furtherance of, or in immediate flight from the crime of kidnapping in the first degree; or
  (b) in the course of, in furtherance of, or in immediate flight from the crime of robbery in the first degree; or
  (c) in the course of, in furtherance of, or in immediate flight from the crime of robbery in the second degree; or
  (d) with the intent to conceal the commission of a crime, or to protect or conceal the identity of a person committing a crime[.]

Longworth claims that the failure of the "to convict" instruction and the special interrogatory to specify in aggravating circumstance (d) the crime that the murder allegedly was committed to conceal resulted in a violation of due process and the constitutional prohibition against cruel and unusual punishment. The State responds that not only did Longworth not object to the court's "to convict" instruction, but the instruction that he himself proposed contains identical language to that which he now claims is objectionable. "Even where constitutional issues are involved, invited error precludes judicial review." *State v. Tyson,* 33 Wn. App. 859, 864, 658 P.2d 55, *review denied,* 99 Wn.2d 1023 (1983); *accord, State v. Boyer,* 91 Wn.2d 342, 345, 588 P.2d 1151 (1979).

Nevertheless, procedural rules are construed more liberally in a capital case, that is, a case in which the death penalty may, but need not necessarily, be inflicted, *Lee v. State,* 31 Ala. App. 91, 13 So. 2d 583, 587 (1943). *State v. Mak,* 105 Wn.2d 692, 749, 718 P.2d 407, *cert. denied,* 107 S. Ct. 599 (1986); *State v. Jeffries,* 105 Wn.2d 398, 418, 717 P.2d 772 *(Jeffries* I), *cert. denied,* 107 S. Ct. 328 (1986). Although Longworth was sentenced to life imprisonment without the possibility of parole, absent mitigating circumstances aggravated first degree murder is punishable by death, RCW 10.95.030(2); *State v. Kincaid,* 103 Wn.2d 304,

310, 692 P.2d 823 (1985). Even if we may review Longworth's assignment of error regarding the jury instructions, however, we find no due process violation here.

■ In *Jeffries* I, at 419–20, our State Supreme Court, in addressing the very question now raised by Longworth, noted that the aggravating circumstance set forth in RCW 10.95.020(7) requires only that "'the person committed the murder to conceal the commission of *a crime* or to protect or conceal the identity of any person committing *a crime.*'" The *Jeffries* I court held that when the aggravating circumstance regarding the concealment of a crime is involved, "[d]ue process . . . does not require that the specific crime be charged and included in the jury instructions." *Jeffries* I, at 419, adopted the rationale of *State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985), wherein the court held that the specific crime intended to be committed inside burglarized premises is not an element of burglary that must be identified since the burglary statutes do not impose such a requirement. The *Jeffries* I court reasoned that in an aggravated first degree murder prosecution, "[t]he specific crime need not be stated, as the statute does not require it." *Jeffries* I, at 420.

Our State Supreme Court's decision on an issue of state law is binding on all lower courts until it is overruled by that court. *State v. Gore,* 101 Wn.2d 481, 487, 681 P.2d 227, 39 A.L.R.4th 975 (1984). Under *Jeffries* I, the jury instruction and special interrogatory here did not violate due process on this ground.

Longworth argues that because the jury instructions did not specify the crime that the murder was intended to conceal, the jury's special finding improperly may have been based upon concealment of a burglary, of which there was no evidence, or of the murder itself. In *State v. Bergeron, supra* at 18, on which *Jeffries* I, at 419, relied, the court noted that generally the specific crime "is either obvious or for some other reason is often not a genuine issue in the case." However, *State v. Bergeron, supra,* acknowledges:

There are, of course, some cases where the specific crime . . . may be material to the defendant's theory of the case . . . In such cases, the time–honored way of proceeding is for defense counsel to file a motion for a bill of particulars, make the requisite showing, and obtain an order requiring the prosecuting attorney to specify the crime . . . by way of a bill of particulars, and to then propose instructions on the subject which will permit the defendant to argue his or her theory of the case in that regard.

(Footnotes omitted.) The record does not reveal that such a bill of particulars was requested in the instant case.

█ In any event, the record is clear that the State argued that Longworth had committed robbery and kidnapping, and the jury was instructed on the elements of these crimes. The State further argued that the murder was committed with the intent to conceal a crime or the identity of a person committing a crime. Based upon the State's argument, the jury instructions given and the evidence adduced at trial, Longworth's contention is unfounded that the special finding may have been based upon concealment of a nonexistent burglary. Despite Brian Blehm's testimony that Longworth's friends were supposed to be "robbing" the victim's home while Longworth kept her preoccupied, the police testimony was that her apartment was undisturbed and no evidence of a burglary was presented. The jury was instructed that to convict Longworth as charged, it needed to find each of the elements of the crime, including the aggravating circumstance, proved beyond a reasonable doubt. "The jury is presumed to follow the court's instructions." *State v. Fondren,* 41 Wn. App. 17, 25, 701 P.2d 810, *review denied,* 104 Wn.2d 1015 (1985).

Similarly without merit is Longworth's contention that the jury improperly may have found the crime concealed to be the murder itself based upon the prosecutor's closing argument comments. The prosecutor's statements regarding Longworth's actions in disposing of the victim's body and

purse, the knife and his own clothes and in wiping his fingerprints from the victim's car do not suggest that Longworth murdered the victim to conceal the murder but that he murdered the victim to conceal his identity as one who had committed a crime.

Moreover, no objection was raised to these closing argument statements, and the record does not show that any alleged prosecutorial misconduct was so flagrant and ill intentioned that no curative instruction could have obviated any resulting prejudice. *State v. Dunaway,* 109 Wn.2d 207, 221, 743 P.2d 1237, 749 P.2d 160 (1987).

Longworth contends that the instructions here resulted in a sentence which violates the prohibition against cruel punishment set forth in the federal constitution's Eighth Amendment and the Washington constitution's article 1, section 14. However, as he himself concedes, the RCW 10.95.020 aggravating factors have been found to narrow the class of persons subject to the death penalty, as constitutionally required. *State v. Kincaid, supra* at 311; *State v. Bartholomew,* 101 Wn.2d 631, 635, 683 P.2d 1079 (1984); *State v. Carey,* 42 Wn. App. 840, 851, 714 P.2d 708, *review denied,* 106 Wn.2d 1003 (1986). Longworth has not shown that the instant case is to the contrary.

### JURY VERDICT

Next, Longworth argues that the jury instructions' failure to specify the crime that the murder was committed to conceal resulted in an inconsistent jury verdict. According to Longworth, the jury's special interrogatory responses that they did not unanimously find that the victim was murdered in the course or furtherance of, or in immediate flight from, first degree kidnapping or first or second degree robbery are inconsistent with the response that the jurors unanimously found that the victim had been murdered with the intent to conceal the commission of a crime or to protect or conceal the identity of a person committing a crime. Longworth appears to assume that since the jury

responded in the negative to the interrogatory questions regarding the three specified crimes, the jury could not have relied upon any of these crimes to have found that the fourth aggravating circumstance regarding a murder to conceal a crime had been established and that no evidence of any other crime exists.

■ "[W]here a special verdict is susceptible of two constructions, one of which will support the general verdict and the other of which will not, we will give such construction as will support the general verdict." *State v. Robinson*, 84 Wn.2d 42, 45, 523 P.2d 1192 (1974); *accord, State v. Simmons*, 35 Wn. App. 421, 425, 667 P.2d 133, *review denied*, 100 Wn.2d 1025 (1983).

■ When the jury unanimously found Longworth guilty of aggravated first degree murder, it returned a special finding that the murder was committed to conceal a crime or the identity of a person committing a crime. As noted in *Jeffries* I, at 419–20, RCW 10.95.020(7) requires only that the murder was committed to conceal the commission of *a crime* or to protect or conceal the identity of a person committing *a crime,* and *Jeffries* I, at 420, held that due process does not require that the specific crime be charged and included in the jury instructions. Therefore, the special interrogatory and general verdict in the instant case can be harmonized in that it may well be that the jury unanimously found that the murder was committed to conceal *a crime* or the identity of a person committing *a crime, i.e.,* either kidnapping or robbery, although it was not unanimous as to either crime.

In *In re Jeffries,* 110 Wn.2d 326, 330–40, 752 P.2d 1338 (1988) (*Jeffries* II), the court rejected what it called a "means within means" argument, that is, that the jury was required unanimously to agree as to alternative ways to satisfy each of the alternative aggravating circumstances. *Jeffries* II, at 339–40 states:

> For example, the petitioner would now seem to want separate instructions and verdicts on (1) whether the murder was committed to conceal the commission of a

crime; (2) whether the murder was committed to protect the identity of any person committing a crime; (3) whether the murder was committed to conceal the identity of any person committing a crime; etc.

*Jeffries* II, at 340, indicates that Jeffries cited no authority for his argument and the court saw no necessity for such a requirement and noted that Jeffries had not objected to the instructions on this ground nor had he proposed instructions on this theory. Similarly in the instant case, Longworth raised no objection to the court's instructions on grounds of the failure to specify the crime that the murder allegedly was committed to conceal, nor did he propose instructions on this theory.

SUFFICIENCY OF THE EVIDENCE

Longworth contends that insufficient evidence supports a finding beyond a reasonable doubt of the aggravating circumstance that the murder was committed to conceal a crime or the identity of a person committing a crime since no crime other than the murder was proven. We disagree.

■ The standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*" *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979), and adding italics). Proof of a crime may be by direct or circumstantial evidence. The jury was given WPIC 5.01, which states in part: "Circumstantial evidence consists of proof of facts or circumstances which, according to common experience permit a reasonable inference that other facts existed or did not exist.". See *State v. Hieb,* 107 Wn.2d 97, 111, 727 P.2d 239 (1986).

As noted above, under *Jeffries* I, at 420–21, the jury needed only to have unanimously found beyond a reasonable doubt that Longworth murdered the victim to conceal a crime or the identity of a person committing a crime without unanimity required as to the specific crime. Here

the jury was instructed on the elements of first degree kidnapping and first and second degree robbery.

First, sufficient circumstantial evidence exists of first degree robbery. Although the victim always wore earrings, a pearl ring and a diamond ring, the pearl ring was missing and the other ring was found underneath the rear floor mat of her car, and earring backings were found on the front floor mat although no earrings were found on the victim's body. The victim's purse, with no money in it, was found in a dumpster. The evidence was that Longworth had a knife.

The reasonable inferences from the evidence indicate that while armed with a deadly weapon or by inflicting bodily injury and with the intent to steal property, Longworth unlawfully took personal property from the victim by the use or threatened use of force or fear of injury. Sufficient evidence exists that Longworth committed second degree robbery if he either was not armed with a deadly weapon or did not inflict bodily injury to have committed first degree robbery. *See State v. Springfield*, 28 Wn. App. 446, 450 n.1, 452–53, 624 P.2d 208, *review denied*, 95 Wn.2d 1020 (1981).

Next, sufficient evidence exists of first degree kidnapping. Brian Blehm testified that when the victim found out that Longworth's friends supposedly were "robbing" her house, the victim started running down the street. Longworth caught up with her, brought her back to the car and placed her in the car's backseat, where she was held by one of Longworth's friends while they drove around. The evidence was that the victim had a bruise on the right forearm near the wrist and that Longworth had a knife with him.

There is sufficient evidence that Longworth restrained the victim by secreting or holding her in a place where she was not likely to be found or by using or threatening to use deadly force; and that the victim was abducted with the intent to further the commission of first or second degree robbery or flight thereafter or to inflict bodily injury on the victim. Further, sufficient evidence exists of second degree

kidnapping if the latter intent was absent.[1] *See State v. Pawling,* 23 Wn. App. 226, 228, 231–32, 597 P.2d 1367, *review denied,* 92 Wn.2d 1035 (1979).

Viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found beyond a reasonable doubt that the murder was committed with the intent to conceal a crime or the identity of a person committing a crime. *State v. Green, supra.* Brian Blehm's testimony was that after the victim started running down the street, she was caught by Longworth, brought back to the car and held while they drove around. Because the victim knew Longworth, the decision was made to get rid of her. Since, as discussed above, there was sufficient evidence of kidnapping and robbery, in light of Blehm's testimony there was sufficient evidence that the victim was murdered to conceal these crimes. Longworth's actions in disposing of certain incriminating articles and in wiping his fingerprints from the victim's car lend further support to a finding of this aggravating circumstance.

## PREMEDITATION

In his pro se brief, Longworth claims that there is no evidence of premeditation, which is an element of first degree murder. Premeditation, which must involve more than a moment in point of time, RCW 9A.32.020(1), is

"the deliberate formation of and reflection upon the intent to take a human life", and involves "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short."

(Citation omitted.) *State v. Ollens,* 107 Wn.2d 848, 850, 733 P.2d 984 (1987). Proof of premeditation may be by circumstantial evidence where the "inferences drawn by the jury are reasonable and the evidence supporting the jury's findings is substantial." *State v. Luoma,* 88 Wn.2d 28, 33, 558

---

[1]Because sufficient evidence exists of second degree as well as first degree kidnapping, it is immaterial that the evidence is weak of kidnapping to further the commission of indecent liberties or flight thereafter.

P.2d 756 (1977); *accord, State v. Bingham,* 105 Wn.2d 820, 824, 719 P.2d 109 (1986).

■ Viewing the evidence in the light most favorable to the prosecution, ample evidence exists here from which a rational trier of fact could have found premeditation established beyond a reasonable doubt. *State v. Neslund,* 50 Wn. App. 531, 557–58, 749 P.2d 725, *review denied,* 110 Wn.2d 1025 (1988). First, the procurement of a weapon was involved since a knife was used in the killing. *State v. Ollens, supra* at 853. Second, the fact that the victim was stabbed in the back and while she was held by another person is evidence of premeditation. *State v. Ollens, supra; State v. Neslund, supra* at 560. Third, Brian Blehm's testimony presents a motive—that Longworth killed the victim to keep her from reporting Longworth to the police. *State v. Ollens, supra; State v. Neslund, supra* at 559–60.

Longworth next contends in his pro se brief that in discussing the proof of premeditation, the State improperly referred to testimony regarding the time it took for the victim to die and improperly asserted that during this time no help was sought for the victim. At trial, no objection was raised to this portion of the closing argument and no curative instruction was requested. Under these circumstances, appellate review is precluded unless the allegedly improper comments constitute prosecutorial misconduct so flagrant and ill intentioned that no curative instruction could have obviated the prejudice engendered. *State v. Dunaway,* 109 Wn.2d 207, 221, 743 P.2d 1237, 749 P.2d 160 (1987). In light of the abundant evidence of premeditation, such is not the case here.

The judgment is affirmed.

WILLIAMS and WEBSTER, JJ., concur.

Reconsideration denied November 1, 1988.

Review denied by Supreme Court February 28, 1989.