14 P.3d 184 (2000)
103 Wash.App. 749
STATE of Washington, Respondent,
v.
Atlas WHELESS, Appellant.
No. 45749-7-I.
Court of Appeals of Washington, Division 1.
December 18, 2000.
As Amended on Reconsideration January 1, 2001.[*]
*186 Kathleen Berry, David Koch, Nielsen, Broman & Associates, Seattle, for Appellant.
Stacie Summerhill, Seattle, for Respondent.
*185 PER CURIAM.
Atlas Wheless appeals his conviction for delivery of cocaine within a school bus route stop zone in violation of RCW 69.50.401(a)(1)(i) and RCW 69.50.435(a)(3), contending the trial court violated his constitutional rights by refusing to suppress a crack cocaine pipe found during a vehicle search. Because Wheless was arrested far away from the truck in which police found the pipe, it was not a lawful search incident to arrest, and the trial court should have suppressed the evidence. Accordingly, we reverse the conviction.

FACTS
On February 5, 1999, several Seattle police officers were conducting a "buy-bust" operation near the Hook, Line and Sinker tavern on Rainier Avenue. Working undercover, Officer Joseph Pioli made contact with Wheless in the tavern's parking lot and asked Wheless for "a forty", a common street term for 40 dollars worth of crack cocaine. Wheless pulled a folded bottle cap out of his pocket, opened it and handed Pioli two rocks of what appeared to be crack cocaine, a suspicion later confirmed by crime lab testing. In exchange, Pioli gave Wheless two pre-marked 20-dollar bills.
As Pioli walked away from Wheless, he signaled the successful buy to three other officers who were participating in the operation. After hearing a description of the suspect over the radio, Officer Daniel Bresnahan observed Wheless, who matched the description, walk to a yellow pick-up truck parked in the lot about 50-75 feet from the tavern's entrance.[1] Wheless got into the driver's seat and, a few moments later, an unidentified woman exited the tavern, walked to the truck, and got into the passenger seat. While Wheless and the woman sat in the car for less than a minute, the observing officers were unable to see their hands. When the woman got out of the truck and walked away, Wheless also left the vehicle and walked toward the tavern's entrance.
Officers followed Wheless into the tavern and arrested him in the tavern's bathroom. They searched him and found six dollars, but they did not find the buy money. A short time after Wheless' arrest, Officer Raymond Volluz searched the pick-up truck using a narcotics detection dog. The dog located a glass tube of the type customarily used to smoke crack cocaine under the floormat on the driver's side.
Wheless was charged with unlawful delivery of cocaine within 1,000 feet of a school bus stop. At the CrR 3.6 hearing, he argued that the truck search was an unlawful warrantless search and moved to suppress the crack pipe. The trial court denied the motion, concluding that the search was lawful as incident to an arrest. A jury found Wheless guilty. At the sentencing hearing, he moved for arrest of judgment or, in the alternative, a new trial. The court denied the motion and imposed a standard range sentence plus a 24-month school bus stop zone enhancement. This appeal followed.

DISCUSSION
The Fourth Amendment to the U.S. Constitution guards against unreasonable *187 searches and seizures.[2] Although warrantless searches are unreasonable per se under the Fourth Amendment, there are several exceptions to that rule: consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, and Terry investigative stops.[3] These exceptions are "jealously and carefully drawn,"[4] and the State has the burden of proving them.[5] Here, the State contends the truck search was justified under the search incident to arrest exception. We disagree.
In Chimel v. California,[6] the United States Supreme Court established a broad principle for the search incident to arrest exception, holding that officers may search the area within the "immediate control" of an arrestee to ensure officers' safety and prevent destruction of evidence. More than a decade later, in New York v. Belton,[7] the Court articulated a bright-line rule for applying that exception in situations involving a vehicle search: An officer who has made a lawful custodial arrest of the occupant of a vehicle may search the passenger compartment contemporaneously with the arrest. This rule satisfied Chimel's "immediate control" principle because "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within `the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'"[8]
In State v. Stroud,[9] our Supreme Court held that arrestees receive even greater protection under article 1, section 7 of the Washington Constitution[10] and fashioned a Belton-like rule that distinguished between a locked and unlocked container or glove compartment accordingly:
During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant....[11]
The Court reiterated Belton's pronouncement that the exigencies of danger to the officers and the potential destruction of evidence provide the justification for searching a vehicle incident to a lawful custodial arrest.[12]
This court refined the analysis further in State v. Fore,[13] when we held that, according to Stroud, "a valid vehicle search incident to an arrest requires a close physical and temporal proximity between the arrest and the search." Although this gloss injected a dose of subjectivity into Stroud's bright-line rule, it was appropriate. The Fore proximity rule *188 ensures that an application of the search incident to arrest exception does not contravene the underlying justification for the Stroud rulepreventing harm to officers and the potential destruction of evidence. Without this gloss, Stroud could be read to allow a search at the time of an arrest regardless of whether the arrest took place in or close to the vehicle being searched.
Applied to the facts here, Stroud and Fore require that items in the truck were at least arguably within Wheless' control at the time of the arrest. They were not. Even assuming temporal proximity,[14] there was no physical proximity between the arrest, which took place inside the tavern's bathroom, and the car search, which occurred in the tavern parking lot. As such, it was not a proper search incident to arrest.[15] The trial court's conclusion that physical and temporal proximity was present because Wheless "was seen sitting in the driver's side of the car in question immediately after having sold narcotics to an undercover police officer" missed the mark. Rather than evaluating the physical and temporal proximity between the arrest and the vehicle search, the court mistakenly focused on the temporal proximity between the drug transaction and the time Wheless spent in the truck. This is not the rule, and the search was unconstitutional. We must reverse the conviction because we cannot conclude beyond a reasonable doubt that a reasonable jury would have reached the same result in the absence of the error.[16] Our concerns about the verdict are significant here because the buy money was never located and the crack pipe could have unduly influenced the jury.
Citing Fore, the State argues that because the officers believed that relevant items like the buy money might have been in the truck because Wheless had recently sat in it, the search was legal. In Fore, this court supported its decision that a car search was a lawful search incident to arrest by commenting that "both men had been occupants of the moving vehicle just a few minutes prior to the arrest [and] the vehicle itself was directly connected to the probable cause determination supporting the arrest."[17] But these observations were dicta because the court had already reaffirmed the Stroud rule and determined that there was temporal and physical proximity between the arrest and search. The overriding criterion for evaluating a warrantless vehicle search incident to arrest is that weapons or evidence be accessible to the arrestee. Where they are not, the search cannot be incident to arrest, and a warrant is required.
The State also relies on the exigent circumstances exception to the warrant requirement, which applies "where it is impractical to obtain a warrant because the suspect is fleeing, the officer or the members of the public are in danger, or based on mobility of a vehicle, and mobility or threatened destruction of evidence."[18] The focus of this *189 exception is the impracticality of obtaining a warrant in time.[19] There were no exigent circumstances to justify the warrantless search in this case. The State claims there was "a risk that evidence remained in the car [and] that important evidence was getting further and further from the scene in the hands of the woman." But while both of those claims may have been true, the record contains no indication that evidence in the truck might have been destroyed or that the officers were prevented from pursuing the woman while waiting for a warrant. The case on which the State relies to support its exigent circumstances argument presented a radically different scenario. In State v. Patterson,[20] the Supreme Court reviewed a warrantless search of a parked, secured, unoccupied vehicle where witness information and physical evidence indicated strongly that the suspect was nearby, demonstrating the "freshness of the pursuit."[21] Upholding the search, the court reasoned that "[h]ad the officers delayed the search by applying for a warrant, the suspect could have moved far from the immediate scene" and that "[t]here was a need to proceed as quickly as possible to apprehend the defendant who had burglarized the store only minutes before the search."[22] In contrast, Wheless was under arrest. No comparable exigent circumstances were present here.
In sum, we reverse Wheless' conviction based on the lack of physical proximity between his arrest and the search of the truck.
Finally, we turn to the arguments Wheless presents in his pro se supplemental brief. Wheless first claims the prosecutor erred in stating "that in order to find [him] innocent, the police of Seattle, W.A., must be lying." He fails to develop his argument any further and merely cites to an assortment of federal cases rather than the line of relevant Washingtion cases, and the State did not respond to Wheless' pro se arguments. Our review of the record indicates that although the extent to which the State emphasized the theme of lying during closing argument was likely improper,[23] it was not "`so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonotion to the jury.'"[24] Wheless' remaining arguments are without merit and do not warrant further discussion.
Reversed.
NOTES
[*] Editor's Note: The final pagination of the amended State Report opinion was not available for the bound volume.
[1] The record does not reveal who owned the truck.
[2] The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[3] State v. Hendrickson, 129 Wash.2d 61, 70-71, 917 P.2d 563 (1996).
[4] Id. at 72, 917 P.2d 563.
[5] Id. at 71, 917 P.2d 563.
[6] 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
[7] 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
[8] Id. at 460, 101 S.Ct. 2860 (quoting Chimel, 395 U.S. at 763, 89 S.Ct. 2034).
[9] 106 Wash.2d 144, 151, 720 P.2d 436 (1986).
[10] That section states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."
[11] Id. at 152, 720 P.2d 436.
[12] Id. at 151, 720 P.2d 436.
[13] 56 Wash.App. 339, 347, 783 P.2d 626 (1989), review denied, 114 Wash.2d 1011, 790 P.2d 168 (1990).
[14] The record does not clearly reveal how much time elapsed between the arrest and the vehicle search. The State explains merely that the officers conducted the search "[a] short time" after the arrest.
[15] Accord, State v. Porter, 102 Wash.App. 327, 6 P.3d 1245 (2000) (holding that warrantless vehicle search was illegal where van searched was 300 feet from defendant when he was arrested). In Porter, Division II reaffirmed that the immediate control principle is the essential measure for determining whether the Belton-Stroud bright-line rule applies and justifies the search: "[I]f the police initiate an arrest and the passenger compartment of a vehicle is not within an arrestee's area of `immediate control,' Stroud does not apply." Id. at 333, 6 P.3d 1245.
[16] An illegal search may be determined harmless on appeal if the court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of error. State v. Gonzales, 46 Wash.App. 388, 402, 731 P.2d 1101 (1986).
[17] Fore, 56 Wash.App. at 348, 783 P.2d 626.
[18] State v. Rulan C., 97 Wash.App. 884, 889, 970 P.2d 821, 990 P.2d 422 (1999).
[19] Id.
[20] 112 Wash.2d 731, 774 P.2d 10 (1989).
[21] Id. at 736, 774 P.2d 10.
[22] Id. at 736-37, 774 P.2d 10.
[23] See State v. Fleming, 83 Wash.App. 209, 213, 921 P.2d 1076 (1996), review denied, 131 Wash.2d 1018 (1997). ("[I]t is misconduct for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken.").
[24] State v. Finch, 137 Wash.2d 792, 839, 975 P.2d 967 (quoting State v. Stenson, 132 Wash.2d 668, 719, 940 P.2d 1239 (1997)), cert denied, 528 U.S. 922, 120 S.Ct. 265, 145 L.Ed.2d 239 (1999). This standard applies to prosecutorial misconduct claims where, as here, defense counsel did not object to the alleged misconduct, request a curative instruction, or move for mistrial. Id. It applies even if a defendant raises the misconduct issue pro se on appeal. See State v. Longworth, 52 Wash.App. 453, 761 P.2d 67 (1988), review denied, 112 Wash. 1006 (1989).